No. 37,527

ANDREW J. MOLONEY, *Appellant*, v. MARJORIE·H. MOLONEY (Ailworth), *Appellee.*

(206 P. 2d 1076)

Opinion filed June 11, 1949.

*Harry K. Allen,* of Topeka, argued the cause, and *L. M. Ascough,* of Topeka, was with him on the briefs for the appellant.

*Walter E. Hembrow,* of Council Grove, argued the cause, and *Wilbur G. Leonard,* of Council Grove, was with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This is an appeal by the father from an adverse ruling in a habeas corpus proceeding whereby he sought to obtain possession of two minor daughters from his former wife who had remarried. Respondent prevailed and the petitioner appeals.

This is the second chapter of the same case in this court. We need not repeat the facts disclosed in the former opinion but refer to it as a full disclosure of facts and circumstances upon which it is based. (*Moloney v. Moloney,* 163 Kan. 597, 185 P. 2d 167.) On September 12, 1946, this petitioner had obtained a decree of divorce and the custody of the children in the state of Missouri. Within twenty-four days after the final decree of the Missouri court, entered on the hearing of the motion for a new trial, the petitioner filed a habeas corpus proceeding in Kansas to obtain possession of the children. Touching the final decree of the Missouri court we held on the first appeal in the habeas corpus case:

"A wife and mother living in a foreign jurisdiction brought an action there for a divorce and custody of her children. Her husband was granted a divorce on a cross petition and she was granted custody of the children and permitted to bring them to Kansas. A new trial was granted by the court of foreign jurisdiction and custody of the children was given therein to the husband, who thereafter brought a habeas corpus proceeding in Kansas to recover possession of them from their mother. *Held,* the final decree of the foreign court was entitled to full faith and credit and the mother, having invoked its jurisdiction for the purpose of having the custody of the children determined by such court, cannot assert that such foreign court lost jurisdiction of the children by reason of their having been brought to Kansas prior to the issuance of the final custody decree by the foreign court. (Following *Kirby v. Kirby,* 143 Kan. 430, 55 P. 2d 356.)" (Syl.)

On the previous appeal we reversed the order of the district court sustaining the wife's demurrer to the husband's evidence. We remanded the case and ordered the trial court to hear any proper evidence of the respective parties relative to conditions which might have changed after September 12, 1946, the date of the Missouri decree, and to consider all evidence which pertained to the best interests of the children insofar as their present and future welfare was concerned.

The case was retried. The trial court made findings of fact and conclusions of law on March 12, 1948, denied the petition for the writ and committed the children, two daughters then four and three years of age, to the respondent, Marjorie Ailworth, subject to the further orders of the court. On the same date the court likewise indicated the need for further orders pertaining to the right of visitation by petitioner and related matters as the parties might agree upon or as the court might make. Absent full agreement by the parties the court subsequently and on August 10, 1948, made its own supplemental orders touching the subjects mentioned.

On March 15, 1948, and in time, petitioner filed his first motion for a new trial on the ground, among others, the decision denying him the custody of the children was contrary to the evidence. The motion was considered and overruled August 10, 1948. On August 13 petitioner filed his motion for a rehearing on the supplemental order. That motion was overruled August 27, 1948.

On August 20, 1948, petitioner had appealed from the decision of March 12, 1948, and from the order and decision "overruling petitioner's motion for a new trial, rendered and decided by said court on August 10, 1948." No appeal was taken from the supplemental order filed August 10, 1948, or from the order overruling the motion for a new trial pertaining thereto. It follows matters covered by the supplemental order are not reviewable.

Touching a review of the appealable order petitioner contends respondent's evidence did not establish changed conditions after the decree of the Missouri court rendered September 12, 1946, which warranted a change in the custody of the children.

The trial court found the conditions had changed materially. Although the findings are all important we need not set forth all of them. They narrate the history and detailed facts and circumstances of the case. Some of them touching particularly the changed conditions will be noted. The court found:

"10. If the petitioner is given custody of his children, they will be cared for by his mother. Mr. and Mrs. Moloney, the parents of petitioner, are in the neighborhood of fifty years of age and are apparently in good health except for Mr. Moloney has some diabetic trouble. He has been engaged in various lines of work at different times and is now sales manager of two corporations which manufacture and sell electronic devices. Both of the parents of the petitioner are intelligent and respectable in appearance and show strong affection for the children in this case. Prior to the divorce, the children were left with Mrs. Moloney almost every week-end and also several times when the respondent was ill.

"12. As shown by the testimony of many witnesses having various degrees of contact with her, the respondent has at this time a good reputation in the community in which she resides. Judged by her appearance in the court room, there is nothing in respondent's manner to suggest coarseness and instability. Rather, her demeanor is that of serious and thoughtful dignity and refinement. This attitude does not appear to be simulated and is in sharp contrast with her conduct as found by the divorce decree of September 12, 1946.

"13. James Ailworth, the present husband of respondent, lived in St. Louis, Mo., before coming to Council Grove in the spring of 1946. Since coming to Council Grove he has established a good reputation in that community, as being industrious, ambitious and energetic. He now operates a produce business in Council Grove, from which he has an income of about $200.00 per month. After business hours he spends considerable time and effort in improveing the appearance of his home and working in the family garden. He is thoughtful and considerate in his relations with the Moloney children, giving part of his spare time to playing with and amusing them. The children get along well with him and enjoy his attentions.

"15. Although given the best medical attention while they resided in St. Louis, the children in question suffered from various minor ailments, the most serious being a nervous tendency shown by Andrea Jeanne. These difficulties may have been somewhat due to the conditions of life in a city of the size and climate of St. Louis. All these ailments have been overcome since the children have lived in Council Grove, and they are now active, robust and hearty in appearance.

"16. The circumstances and conditions affecting the welfare of said children have materially changed for the better since September 12, 1946, in that their health has been substantially *benefited* by the change of climate and living conditions; in that respondent now has a sufficient and satisfactory home of her own for herself and her children, and adequate means of support; and, in that the attitude and conduct of respondent at this time is materially bettered and improved than that found to exist by the decree of September 12, 1946.

"17. I find that the respondent is now a fit and proper person to have the care and custody of the children in question, and that because of their tender years, the best interests and welfare of said children require that they remain in the care and custody of their mother, the respondent herein."

Counsel for petitioner argue earnestly the evidence did not justify the findings or judgment. Among the factors stressed is one that the Missouri court had granted the divorce to the petitioner and after having originally awarded custody of the children to respondent changed that order and gave the custody to petitioner. Special emphasis is also placed upon evidence that respondent's present husband broke up petitioner's home and married his former wife almost immediately after the Missouri judgment of divorce and before the Missouri court passed on the motion for a new trial. That he did so

marry her without legal sanction is conceded. That he was responsible for the marital discord is not at all clear.

It must, however, be admitted these facts cannot be, and they have not been, lightly regarded by this court in its review of the record. A studious review of the evidence and the extensive and detailed findings of the trial court, however, also convinces us that court gave careful and patient consideration to all these facts and circumstances in determining not the wishes and feelings of the parents only but the best present and future interests of the children. Moreover clarity of thinking requires it be recognized the custody of the children was not awarded to Mr. Moloney but to the mother of the children.

The trial court had the additional and highly important advantage over this court, which we have so often been compelled to recognize and state, of seeing the parties, observing their demeanor, assessing their character, weighing their testimony and considering the best interests of the children under all the circumstances. We have only the cold narrative of printed facts before us. It alone cannot possibly adequately portray the whole picture as witnessed by an able and discerning trial judge, the trier of the facts.

In order to reverse the trial court we would be obliged to say that notwithstanding the highly important advantage the trial court had over this court, we believe that court acted arbitrarily and not in the exercise of sound judicial discretion. If the record indicated such action we should not, and would not, hesitate to reverse the judgment. Careful analysis and a fair consideration of the entire record does not permit us to so conclude. This is particularly true in view of the tender age of these two girls, four and about three, at the time of trial.

One of the most difficult, trying and unpleasant tasks for any court to perform is the duty of taking little children from one parent and awarding their custody to the other. Such an order is seldom, if ever, entirely satisfactory to both parties. That is especially true where, as here, both parents really have genuine affection and love for their children. Yet some order must be made when the relationship between the parents compels it. We cannot properly say the evidence did not warrant the findings made.

Counsel for petitioner next contend the district court of Kansas lacked jurisdiction to determine whether conditions had changed so as to warrant a transfer of custody. They remind us that on the

former appeal we gave full faith and credit to the final Missouri decree which awarded the custody of the children to the petitioner under facts existing as of September 12, 1946. They argue the Missouri court alone had jurisdiction to change the custody decree for the reason the domicile of both petitioner and the children was in that state. They insist the district court of Kansas had no jurisdiction in the premises unless it appeared this state, by virtue of its police power, had an interest in the protection and safety of the children owing to the unfitness of the father and that the trial court did not find such unfitness existed. It is true the court did not make such a finding. In support of the foregoing legal contentions relied upon by counsel for petitioner they cite Restatement, Conflict of Laws, §§ 32, 47, 147, 148; 81 Univ. of Pa. Law Rev., p. 971; *White v. White,* 160 Kan. 32, 44, 159 P. 2d 461.

Tested by the statement of law contained in the syllabus of the White case, *supra,* it appears the contentions are probably somewhat too broad. It must, however, be admitted there is substantial authority to support petitioner's contentions. The conflict of authority touching jurisdiction has been recognized by this court in a number of cases. Some of them are *Wear v. Wear,* 130 Kan. 205, 285 Pac. 606; *White v. White,* supra, and others cited in both opinions.

Our decisions, as indicated in the Wear and White cases, and others which might be cited, are to the general effect that ordinary judgments of foreign courts receive full faith and credit in this state in accordance with the federal constitutional provision (art. 4, § 1); that rule is limited as to orders or judgments of foreign courts pertaining to the custody of minor children; such a custody order does not import finality but is subject to modification depending upon changed conditions; a custody order or judgment of a foreign court in *res adjudicata* only as to matters determined by the foreign decree in that case, and as of the time it was rendered. We have also held a foreign custody decree is not controlling as against the state in its relation of *parens patriae* in considering the welfare of children in a subsequent hearing involving that subject. (*In re Bort, Petitioner, &c.,* 25 Kan. 308.) But it appears the statement of that rule was more accurately guarded in the later Wear case, *supra,* where it was held:

"In a habeas corpus proceeding brought by one of the parents against the other for the custody of their child, the court has before it the question of the rights of the parties as between themselves, and also has before it, if

presented by the pleadings and the evidence, the question of the interest which the state as *parens patriae* has to promote the best interests of the child." (Syl. ¶ 3.)

In any event on the first appeal, as previously stated, we directed the trial court to hear evidence of changed conditions since the final Missouri decree of custody. No contention was then made that the pleadings were not sufficiently broad to show this state had ⹁ proper interest in the welfare of the children who were within its borders pursuant to consent of the Missouri court under its first order which awarded custody to the respondent.

In fairness to present counsel for petitioner, and without intent to reflect in any manner on petitioner's previous counsel, it should be stated they did not represent the petitioner in the original case or on the first appeal. When the case was remanded the trial court heard evidence touching changed conditions as this court directed. In view of the circumstances we think the judgment should be affirmed. It is so ordered.

WEDELL, J. (dissenting): It is my opinion that in order to actually give full faith and credit to the Missouri judgment which awarded custody of the children to the father, petitioner in the instant case, the writ must be allowed. There is no finding the condition with respect to the father had changed since the date of the Missouri decree so as to justify invoking the police power of this state for the protection of the children. There is no finding the father, since the Missouri decree, has become an unfit person or that for any other reason it would be unsafe for courts of this state to surrender possession of the children to him in compliance with the Missouri decree.

This view is not intended as a criticism of the findings of the trial court with respect to what might constitute the best interests of the children if this were an ordinary custody case in which courts of this state had jurisdiction over that general issue.

On the former appeal, *Moloney v. Moloney,* 163 Kan. 597, 185 P. 2d 167, we recognized and gave full faith and credit to the Missouri decree in the syllabus, but our directions to the trial court, contained in the concluding portion of the opinion, I think were too broad and caused the trial court to make findings pertaining to the best interests of the children generally. The fact it did so should not be permitted to prejudice the rights of the petitioner. If respondent, the mother, desires to litigate the question of changed

conditions generally to show the best interests of the children now require that she be given their custody she, of course, has a perfect right to do so. Such an action, however, must be filed in the legal domicile of the children which is the domicile of the father, their legally appointed custodian. That domicile is the state of Missouri.

PARKER, J., joins in the foregoing dissenting opinion.